IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MEEKA ARESABA, B-65519, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  03-cv-167-GPM |
| ) | |
| JONATHAN WALLS, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter has been referred to the Magistrate Judge Donald G. Wilkerson by Chief United States District Judge G. Patrick Murphy pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the Motion for Summary Judgment filed by the defendants, Jonathan Walls, Michael Ellis, Roger Cowan, and Donald Snyder on July 20, 2004 (Doc. 31).   For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment  be **GRANTED**, and that this case be **DISMISSED**,  and that the court adopt the following findings of fact and conclusions of law:

Findings of Fact

The plaintiff, Meeka Aresaba, filed a complaint on March 12, 2003 (Doc. 1)  pursuant to 42 U.S.C.§ 1983 alleging that defendants violated his First Amendment Rights to religious liberty between February 2002 and August 21, 2002, while Aresaba was incarcerated in the Menard Correctional Center.  Aresaba contends that his rights were violated  by threatening him with discipline, disciplining him for refusal to cut his dreadlocks, and eventually forcing him to

-1-

cut his dreadlocks.  The defendants are seeking summary judgment on Aresaba's claim.

On February 18, 2002 Aresaba was informed by defendant Ellis that the Warden of Menard Correctional Center  (defendant Walls)  was airing a  bulletin on Inmate Channel 7 forbidding inmates from having dreadlocks. (Doc. 1 p. 1; Doc. 32, Exhibit B, p 15).  It is unclear whether the airing was by video images or spoken words.   Defendant Ellis informed Aresaba that if he did not cut off his dreadlocks the next time he visited the barber, he would be held in segregation until he cut his hair. (Doc. 1 p. 1)  Aresaba then  told defendant Ellis that he is a Rastifarian and that his religious beliefs require him to wear his hair in dreadlocks.  (Doc. 1 p. 1) Defendant Ellis at that time informed Aresaba that there were no exceptions to the Warden's bulletin.  (Doc. 1 p. 1; Doc. 32, Exhibit B, p. 16).

On February 26, 2002 Aresaba filed a grievance concerning the Warden's bulletin on hair (Doc. 1, p. 1, Exhibit. A).  In the grievance Aresaba states that the "substance of the bulletin itself implies and or threatens to cut my dreadlocks by force if necessary for reasons unclear to me.  Not-withstanding [sic] any alleged reason . . . my faith and vow of the Nazarite prohibit me from cutting my hair." (Doc. 1, Exhibit. A)   On or about February 28, 2002 Counselor Goforth responded in writing that Rastifarians are not exempt from the Individual Grooming Policy.  She further wrote that the policy stated that there were security and safety concerns and that hair/dreadlocks may be cut due to the inability to conduct a thorough search.  (Doc. 1, Exhibit. A).

Aresaba further alleges that between February 29 and August 21, 2002 that he was subject to threats and  harassment by defendants for refusing to sign a waiver form that would in essence be an agreement by him that his hair would be cut. (Doc. 1, p. 2)   In his deposition of

May 25, 2004 he testified that he was threatened and harassed by defendant Ellis on two occasions, February 18, 2002 and August 20, 2002.  (Doc. 32, Exhibit B, p.17)  He stated that he was placed on lockdown from July 20 - 28  (Doc. 1, Exhibit D; Doc. 32, Exhibit B, p.18) and that during this time he was unable to leave his cell.  (Doc. 1, p. 2; Doc. 32, Exhibit B, p. 19)  Aresaba alleges that on August 20, 2002 defendant Ellis informed him that his transfer would be stopped and that he would be taken to segregation unless he signed a waiver agreeing to cut his hair.  (Doc. 1 p.2; Doc. 32, Exhibit B, p.16)  Aresaba further states that he refused to sign the waiver and the barber was called and his hair was forcibly cut.  (Doc. 1, p.2; Doc. 1 Exhibit. E).  Additionally, Aresaba filed another grievance regarding the policy and the cutting of his dreadlocks on September 5, 2002.  (Doc. 1, Exhibit. E).  On September 19, 2002 the Administrative Review Board (ARB) denied his grievance as being without merit.  (Doc. 1, Exhibit. F).  Defendant Donald Snyder, Director of the Illinois Department of Corrections, concurred with the decision of the ARB.  (Doc. 1, Exhibit. F).

On March 12, 2003, Aresaba filed this Complaint.  (Doc. 1).   On July 20, 2004 the defendants filed a motion for summary judgment.  (Doc. 31).  On that same date, the defendants also filed a notice informing Aresaba of the consequences of his failure to respond to their motion for summary judgment.  (Doc. 33).  On July 27, 2004 Aresaba filed a Motion for Extension of Time.  (Doc. 34).  Magistrate Judge Gerald B. Cohn granted Aresaba until October 21, 2004 to respond to defendants' motion for summary judgment.  (Doc. 35).   Aresaba filed a second motion for extension of time on October 8, 2004 requesting that he granted until November 21, 2004 to respond to defendants' motion for summary judgment.  (Doc. 36)   On January 4, 2005 this case was reassigned to Magistrate Judge Donald G. Wilkerson.   (Doc. 37)

On January 28, 2005 Judge Wilkerson granted Aresaba's motion for extension of time and gave him until February 16, 2005 to respond to defendants' motion for summary judgment.  (Doc. 38)  Subsequently,  this Court ordered Aresaba to respond to the defendants' motion for summary judgment in an Order dated March 10, 2005 (Doc. 39).  Said order granted Aresaba until April 12, 2005 to respond.  Additionally the order informed Aresaba, in plain language, pursuant to Lewis v. Faulkner, 689 F. 2d 100 (7th Cir. 1982) and Bryant v. Madigan, 84 F.3d 246 (7th Cir. 1996) of the consequences of his failure to respond to the motion for summary judgment.  To date, Aresaba has not responded to defendants' motion for summary judgment.

     Aresaba was deposed by the defendants on May 25, 2004.  (Doc. 32, Exhibit B)   In his deposition Aresaba stated that the Piby, the religious book that Rastafarians believe in, requires that he not cut his hair but the Piby does not state how long or thick his dreadlocks must be.  (Doc. 32, Exhibit. B, p. 7)    He testified that after his hair was cut he still had some dreadlocks.  (Doc. 32, Exhibit B., p. 26)   Aresaba  further testified that defendant Cowan violated his First Amendment rights by implementing the hair grooming policy at Menard.  (Doc. 32, Exhibit B, p. 29)   He testified that defendant Snyder violated his First Amendment rights by implementing the policies and directives of the Illinois Department of Corrections, which contained the 502 hair grooming policy.  He testified that Warden Walls violated his First Amendment rights by adopting the 502 hair grooming policy. (Doc. 32, Exhibit B, p. 29)   In his deposition Aresaba stated that he  saw a copy of the administrative directive regarding the hair grooming policy and defendant Ellis spoke to him about the policy.  (Doc. 32, Exhibit B, p. 29)   He further stated in his depositon that none of the defendants ever informed him that he was being required to cut his dreadlocks because he was a Rastafarian or to hinder his religion.  (Doc. 32, Exhibit B, p. 30 -

31)

## Conclusions of Law

Federal Rule of Civil Procedure 56(e) states in pertinent part,

> . . . When a motion for summary judgement is made and supported as provided in this rule, an adverse pa adverse party's pleading, but the adverse party's response, affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, where appropriate, shall be entered against the adverse party.

However, the law is clear that Aresaba's failure to respond must be afforded a heightened level of scrutiny because of his status as a pro se plaintiff. Lewis v. Faulkner, 689 F.2d 100 (7th Cir. 1982); Timms v. Frank, (7th Cir. 1992) (The Federal Rules of Civil Procedure forbids a District Court from acting on a summary judgment motion without giving the non-movant a reasonable opportunity to present counter affidavits). The inquiry then turns upon a reasonableness standard and whether Aresaba had notice and opportunity to respond. As previously stated, the record is replete with instances in which Aresaba had notice and opportunity to respond to defendants's motion for summary judgment. His motions for extension of time were granted. (Doc. 34, 36, and 38). Additionally, because of his status as a pro se plaintiff, this Court granted him until April 12, 2005 to respond to the defendants' motion for summary judgment. (Doc. 39) Aresaba received a total of seven months in which to file a response to defendants' motion for summary judgment. This Court finds that the record is clear and unambiguous and Aresaba had notice and a opportunity to respond.[1]

---

[1] It is clear Aresaba knows how to contact the Court as evidenced by his filing suit and various other filing and motions for extension with the Clerk of the Court.

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999); Dempsey v. Atchison, Topeka and Santa Fe Railway Company, 16 F.3d 832, 836 (7th Cir. 1994). The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999). A fact is material if it is outcome determinative under applicable law. Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1999); Smith v. Severn, 129 F.3d 419, 427 (7th Cir. 1997); Estate of Stevens v. City of Green Bay, 105 F.3d 1169, 1173 (7th Cir. 1997). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts. Plair v. E.J. Brach&Sons,Incorporated,105 F.3d 343, 346 (7th Cir. 1997); Lawshe v. Simpson, 16 F.3d 1475, 1478 (7th Cir. 1994); Dempsey, 16 F.3d at 836. Finally, summary judgment "will not be defeated simply because motive or intent are involved." Roger v. Yellow Freight Systems, Inc., 21 F.3d 146, 148 (7th Cir. 1994). *See also* Miller, 168 F.3d at 312; Plair, 105 F.3d at 347; Cf. Hong v. Children's Memorial Hospital, 993 F.2d 1257, 1261 (7th Cir. 1993); Lac Du Flambeau Indians v. Stop Treaty Abuse-Wisconsin, Inc., 991 F.2d 1249, 1258 (7th Cir. 1993).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 212 (1986)

*See also*: Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986); Haefling, 169 F.3d at 497-98; Sybron Transition Corporation v. Security Insurance Company of Hartford, 107 F.3d 1250, 1255 (7th Cir. 1997); Weinberger v. State of Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997).

Defendants argue that Aresaba has failed to prove that his First Amendment rights were violated when departmental and institutional directives at Menard Correctional Center required the cutting of Aresaba's hair. Defendants assert that there was a legitimate penological interest involved concerning the style of inmates' hair. They argue that the length of hair was not the issue as long as it did not, among other things, create a security risk. Furthermore they state that the policy did not solely apply to inmates with dreadlocks, (Doc. 32, p. 6) that it applied to any inmate whose hairstyle was determined to be a health, sanitation, or security risk. (Doc. 32, p. 6) The defendants state that the directives that were issued were religiously neutral. (Doc. 32, p. 6) Moreover, they assert that Aresaba was in protective custody (Doc. 32, Exhibit A, p. 1; Exhibit B, p. 20 - 21) and that protective custody is used for inmates who have special security needs. (Doc. 32, Exhibit A, p.1) The defendants' maintain that any inmate at Menard could be

searched to determine if they possessed contraband and that a search would included the possible search of an inmate's hair. (Doc. 32, Exhibit A, p. 1)  Defendant Walls stated in his affidavit that dreadlocks are harder to search.  That dreadlocked hair is usually thick and matted together and that adequate visual and tactile searches cannot be performed. (Doc. 32, Exhibit A, p. 7)  Walls stated, therefore, Aresaba's hairstyle posed a safety and security concern. (Doc. 32, Exhibit A, p. 7)  Additionally based upon Walls experience in the Illinois Department of Corrections, inmates can hide items in their hair, including but not limited to, razor blades, glass, drugs, and needles. (Doc. 32, Exhibit A, p. 2) Some of these items cannot be detected by running fingers through the hair or with metal detectors. (Doc. 32, Exhibit A, p. 2)  In attempting to manually search an inmates hair, staff may be injured by needles, razor blades or shards of glass. (Doc. 32, Exhibit A, p. 3) Additionally the manual search of hair, leaves the staff susceptible to cuts which can lead to infection or transmission of diseases such as Tuberculosis, Hepatitis, or HIV. (Doc. 32, Exhibit A, p. 3) The Individual Hair Grooming Policy was one of a number of progressive steps taken by the Administrators to improve the safety and security of staff and inmates. (Doc. 32, Exhibit A, p. 2)  Based on the foregoing, this Court finds that there is no genuine issue as to any material fact.  Furthermore, Aresaba has not presented any evidence in response to defendants' motion for summary judgment.

      It is well established that prisoners have the right to freely exercise their religious beliefs. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).  However, this right does not depend on the ability to pursue each and every aspect of a preferred religious practice . Rather:

> A prison may restrict a prisoner's ability to adhere absolutely to a particular tenet of his religion, and if the prison has sound penological interests supporting the restriction, and if those interests outweigh the prisoner's religious interests, the restriction does not violate the First Amendment.

Canedy v. Boardman, 91 F.3d 30, 33 (7th Cir. 1996) (citing O'Lone , 482 U.S. at 352)   Four factors guide the balancing approach: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the constitutional right remain open to the inmate; (3) the impact accommodation of the constitutional right will have on guards and other inmates, as well as on prison resources generally; and (4) whether an alternative exists that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests.  Turner v. Safley, 482 U.S. 78, 88-91 (1987).

Construing the facts in Aresaba's favor, Aresaba was informed of the Warden's bulletin on the Individual Hair Grooming Policy in February of 2002.   He saw a copy of the directive. He was asked on two occasions to sign a waiver, agreeing to cut his hair.  He refused each time. He was informed that if he failed to agree to cut his hair, his hair would be cut anyway.  He was placed in locked down for eight days in July 2002.  On August 20, 2002 he was taken to defendant Ellis' office and informed that his transfer would be stopped and that he would be taken to segregation, if he did not agree to cut his hair.  Aresaba refused.  His hair was cut anyway at defendant Ellis direction.  The next day, Aresaba was transferred.  His hair was shorter after the haircut, but he still had some dreadlocks.

Prison officials have a legitimate penological interest in detecting concealed contraband and protecting themselves and other inmates from harm.  Cutting an inmates hair, appears to be a rational regulation and serves a legitimate governmental interest.   Applying the factors cited in Turner,  Aresaba has not come forward with any evidence that the individual hair grooming policy was not rationally connected to a legitimate governmental interest or that the policy was

not religiously neutral.  Aresaba testified in his deposition that he still had some dreadlocks remaining after his hair was cut and that he possessed the Piby, which is the religious book used by Rastifarians.  Therefore, Aresaba could still practice his faith by reading the Piby.  Aresaba has put forward no evidence that there were alternative of accomplishing the prisons interest as required by Turner.  Further as required by Turner, Aresaba has failed to come forward with any evidence of what impact accommodation his asserted constitutional right would have on employees of the prison and other inmates.  Finally, Aresaba has not provided the Court with an alternative to the individual hair grooming policy that would fully accommodate his right at *de minimis* cost to the  valid penological interests.  Therefore, this Court finds that the prison regulations Aresaba challenges did not violate his rights under the First Amendment.

For the reasons set forth above, it is the **RECOMMENDATION** of this Court that the Motion for Summary Judgment filed by the defendants on July 20, 2004 (Doc. 31) be **GRANTED**, and that the case be **DISMISSED**, and that the court adopt the above findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have ten (10) days after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals.  Snyder v. Nolen, 380 F.3d 279, 284 (7th Cir. 2004); United States v. Hernandez-Rivas, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 1, 2005.**

**s/ Donald G. Wilkerson**
**DONALD G. WILKERSON**
**United States Magistrate Judge**
